Wrenn, Daniel M., J.
The plaintiff, Wells Fargo Equipment Finance, Inc. (Wells Fargo), has brought the present action in a multi-count complaint seeking a judgment for monies owed arising out of the financing by the plaintiff of certain commercial equipment purchased by the defendant, Jennifer Martin. The defendant has answered the complaint and asserted a counterclaim alleging that Wells Fargo in its conduct violated Chapter 93A.
This matter was the subject of a juiy-waived trial on August 8, 2013. Entered into evidence at the time of the trial was Exhibit 1 which consisted of a binder of agreed upon exhibits which exhibits were eighteen in number, as well as a stipulation of facts agreed to by the parties. In addition, the testimony in this matter consisted of testimony from Melissa Harris, Jennifer Martin and Steven Koeninger.
FACTS
I make the following findings of fact based on the credible evidence presented at trial, as well as the stipulation of facts and the supplemental stipulation of facts agreed to by the parties.
On or about June 12, 2008 Jennifer Martin entered into a contract with Wells Fargo, entitled a combination loan and security agreement for the purchase of a 2006 OM Apollo Jaw Crasher. As of that time, Ms. Martin was a principal in a construction company which did primarily excavating and landscaping services entitled Sentry Services, Inc. Ms. Martin purchased this equipment for use in Sentry Services, Inc.’s business and Sentry’s operations manager, Steven Koeninger used the equipment in various jobs on behalf of Sentry.
The contract provided for a principal sum of $397,900.00 to be paid with interest based on a 6.5% per annum basis with 72 consecutive monthly installments of $6,688.67.
Soon after the equipment was purchased by Ms. Martin, Sentry ran into some financial difficulties. These difficulties were primarily associated with the fact that Sentry was not being paid on a regular basis on a job that it had contracted in Hampden County. Sentry had contracted to do excavation work for a Walmart project and while Sentry was doing the work on a regular basis the payments for that project were delayed. Thus, Ms. Martin fell behind on the payments and the loan went into a default status.
In January of 2010 Mr. Koeninger, at the direction and under the authority of Ms. Martin, engaged in a number of discussions with Wells Fargo. These discussions involved discussions with James McMullen and Melissa Harris. Wells Fargo, at trial, offered the testimony of Melissa Harris and the parties agreed to the admission of a number of documents which contained information pertaining to James McMullen. Ms. Harris is a vice-president for Wells Fargo and served in a supervisory capacity in their Arizona office overseeing the Wells Fargo business of collections. I find Ms. Harris’s testimony credible. The primary issue in dispute involves the plaintiffs contention that the original agreement, marked as Exhibit 1 in the agreed exhibits, is the operative agreement between the parties. Alternatively, the defendant alleges that Steven Koeninger, on behalf of Ms. Martin, negotiated a new agreement between Jennifer Martin and Wells Fargo as of February 2010, which agreement supercedes the original contract.
The Court, on this issue, credits the testimony of Melissa Harris and does not find credible testimony of Steven Koeninger. Wells Fargo, as a sophisticated lender, had in place in 2010 policies and procedures which required all contracts be in writing. Further, in the event of an original contract being revised said new or substitute contract would require various levels of *396 approval through the Wells Fargo structure. Ms. Harris credibly testified that no such policies and procedures were followed or implemented in this case since there was no new or substitute agreement.
In addition, while Ms. Martin and Mr. Koeninger allege that an oral agreement was arrived at between the parties, at no time did Ms. Martin or Mr. Koeninger ever reduce that agreement to writing. Mr. Koeninger and Mr. Martin had a number of written, oral and electronic communications with Wells Fargo subsequent to the time of the alleged agreement; however, at no time did either of them reference this new or subsequent agreement, nor did they provide any documentation to support that agreement.
As set forth in the stipulation of facts and the supplemental stipulation of facts proper notices were sent by Wells Fargo to Jennifer Martin and ultimately the equipment was repossessed by Wells Fargo. Once repossessed, the equipment was sold at auction for $127,500.00.
The Court finds that the sale of the property was done in a commercially reasonable fashion and that the costs incurred in facilitating that sale were reasonable, such that the net proceeds from the sale amount to $113,075.00. As of the date of the sale the total balance due on the equipment was $353,119.14, leaving a deficiency balance of $240,044.14.
DISCUSSION
The Court finds that the legally operative and binding contract between the parties is the June 12, 2008 combination loan and security agreement referenced at paragraph one of the stipulation of facts and entered into evidence as agreed Exhibit 1. Given that the June 12, 2008 contract is the operative document, Minnesota law applies to this matter.[1] The evidence in this matter establishes that the subject equipment was sold at auction on June 24, 2010 and the net proceeds from that sale were $113,075.00. As of the date of sale the total amount due to Wells Fargo from the defendant was $353,119.14. Thus, subsequent to the sale and applying the net proceeds of the sale to the outstanding balance the total deficiency balance as of that date was $240,044.14.
CONCLUSION
Based on the above Court findings, discussion and analysis, judgment shall enter in favor of the plaintiff as to Count I and Count III of the plaintiffs complaint in an amount of $240,044.14 plus statutory interest. Counts II, IV and V are dismissed. In addition as to the defendant’s counterclaim, judgment shall enter in favor of the defendant-in-counterclaim Wells Fargo Equipment Finance, Inc. and the defendant, Jennifer Martin’s counterclaim is herewith dismissed.

The parties have stipulated that in the event the Court finds the June 12, 2008 agreement to be the operative agreement, then in fact Minnesota law applies.